Barbara **HANDSCHU, Ralph Digia, Alex McKeiver, Shaba OM, Curtis M. Powell, Abbie Hoffman, Mark A. Segal, Michael Zumoff, Kenneth Thomas, Robert Rusch, Anette T. Rubenstein, Michey Sheridan, Joe Sucher, Steven Fischler, Howard Blatt and Ellie Benzone, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**SPECIAL SERVICES DIVISION, a/k/a Bureau of Special Services, William H.T. Smith, Arthur Grubert, Michael Willis, William Knapp, Patrick Murphy, Police Department of the City of New York, John V. Lindsay and various unknown employees of the Police Department acting as under-cover operators and informers, Defendants.**

No. 71 Civ. 2203(CSH).

United States District Court, S.D. New York.

March 12, 2003.

Paul G. Chevigny, Jethro M. Eisenstein, Profeta & Eisenstein, Martin R. Stolar, Franklin Siegel, Attorneys for plaintiff class, Arthur Eisenberg, New York Civil Liberties Union, appearing with attorneys for plaintiff class, New York City, for Plaintiffs.

Gail Donoghue, Corporation Counsel of the City of New York, New York City, for Defendants.

## MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge.

Counsel for the parties have complied with the Court's instructions set forth in *Handschu v. Special Services Division*, 273 F.Supp.2d 327, 349 (S.D.N.Y.2003), familiarity with which is assumed. The NYPD's final proposed draft of the guidelines to be included in the Patrol Guide ("the NYPD Guidelines") are now before the Court for review.

The Court commends counsel upon the quality of their efforts. Corporation Counsel adopted the FBI Guidelines for inclusion in the NYPD Patrol Guide with meticulous care. Class counsel were judicious and reasonable in their objections and suggestions directed to Corporation Counsel's first draft. Corporation Counsel adopted a number of those suggestions and amended the first draft of the NYPD Guidelines accordingly, thereby materially improving the document. Some disputes remain. Not all require discussion by the Court. Those that do are dealt with in this Opinion.

### I.

Section V of the NYPD Guidelines covers "Levels of Investigation." There are four levels: Checking of Leads; Preliminary Inquiries; Investigation; and Terrorism Enterprise Investigation. The section dealing with a Terrorism Enterprise Investigation, Section V.D., provides at V.D.1.c.: "Mere speculation that force or violence might occur during the course of an otherwise peaceable demonstration is not sufficient grounds for initiation of an investigation under this Subpart."

Class counsel would prefer to have this language appear in Section II, under the caption "General Principles." However, I agree with Corporation Counsel that the present placement of the "mere speculation" language in the Terrorism Enterprise Investigation subpart is preferable. That placement mirrors the FBI Guidelines, and is particularly relevant to the level of investigation in question. Inclusion of the language in the General Principles would introduce a note of ambiguity with respect to the requirements for other levels of investigation. The General Principles themselves contain important safeguards, *viz.*, the provisions that "[i]t is important that such investigations not be based solely on activities protected by the First Amendment," and that "[i]nvestigations shall be terminated when all logical leads have been exhausted and no legitimate law enforcement purpose justifies their continuance."

## II.

Corporation Counsel agreed with class counsel that a provision with respect to "exigent circumstances," which permit the use of unspecified lawful investigative techniques without the prior written approval of a supervisor, be deleted from Section V.B.6. and included in the General Principles, thereby giving the language a useful and more broad application. In such circumstances, "such approval shall be obtained as soon as practicable in accordance with the provisions of these guidelines"; I think that language, whose flexibility does not diminish its urgency, is preferable to the 14–day period for seeking approval suggested by class counsel. My ruling on that issue extends to all 14–day provisions suggested by class counsel.

Given this relocation of the "exigent circumstances" language from Section V.B.6. to the General Principles, Section II.2, it would seem that Section V.C.4.a. of the proposed final draft should be amended, either to delete the reference to exigent circumstances entirely, or at least the reference to Section V.B.6., where the language no longer appears.

## III.

In the NYPD's initial draft, Section V.D.1.a. provided that a terrorism enterprise investigation "may be initiated when facts or circumstances reasonably indicate that two or more persons are engaged in an enterprise for the purpose of (i) furthering political or social goals wholly or in part through activities **that involve force, violence or other unlawful acts**; (ii) engaging in terrorism as defined in N.Y. Penal Law § 490.05; or (iii) committing any offense described in N.Y. Penal L. §§ 490.10, 490.15, 490.20, 490.25, 490.30, 490.35, **or other related statutes currently in effect or subsequently enacted**." As for the first emphasized phrase, class counsel suggested that the language read **"that involve force or violen[t] acts and a violation of criminal law."** They say correctly that this language more closely tracks the FBI Guidelines. As for the second emphasized phrase, class counsel say, equally correctly, that this language does not appear in the FBI Guidelines, and the phrase "makes this rule open-ended." Eisenstein declaration dated March 3, 2003 at ¶ 9.

With respect to the first of these two phrases, I do not think that there is a material difference between the two versions, but I favor the NYPD's language because of the differences that do exist between the penal laws of the United States and New York State. As Corporation Counsel observe, under federal criminal law the use of force or violence, standing alone, generally does not constitute a crime; usually an additional element is

required to justify a federal prosecution. *See, e.g.,* the Hobbs Act, 18 U.S.C. § 1951 (affecting commerce or movement of articles or commodities in commerce "by wrongful use of actual or threatened force, violence, or fear," 18 U.S.C. § 1951(a),(b)). Under the New York Penal Law, the use of force or violence constitute crimes in and of themselves; *see, e.g., Ricciuti v. New York Transit Authority,* 70 F.Supp.2d 300, 321 (S.D.N.Y.1999) (considering the felony of assault in the second degree as defined by N.Y. Penal L. § 10.00(10)). Other offenses may involve force or violence but are classified by the New York Penal Law as "violations," rather than felonies or misdemeanors. The NYPD's language is more closely tailored to the state criminal laws the Department is charged with enforcing, and is preferable for that reason.

With respect to the second phrase in question, its inclusion in the NYPD Guidelines seems to me a sensible provision. It is likely that there will be "subsequently enacted" legislation in this area, and the language gives the NYPD flexibility to adapt the Guidelines to it. The requirement that subsequently enacted statutes be "related" to those presently identified by the NYPD Guidelines militates against the language being regarded as "open-ended," and the relationship should not be difficult to discern. Accordingly I approve the use of this phrase in the several sections of the NYPD Guidelines where it occurs.

### IV.

Section V.D.1.b.defines lists a variety of statements containing "threats or advocacy of violence or other covered unlawful acts," which the NYPD may consider in determining "whether the threshold standard for terrorism enterprise investigation is satisfied." The list includes statements about "killing or injuring public officials, or destroying public facilities, **or defying lawful authority.**" While acknowledging that the emphasized phrase appears in the FBI Guidelines, class counsel argue that it should be deleted because the phrase "suggests that a terrorism enterprise investigation could be predicated on statements advocating acts of peaceful civil disobedience." Eisenstein declaration at ¶ 11.

█ It is of course true that "acts of peaceful civil disobedience" usually have nothing to do with terrorism. A statement by a group advocating the "defying of lawful authority" by its members in order to protect the environment or protest government action (the sort of defiance that results in publicized and photographed arrests) certainly does not brand the group as "terrorist." However, the NYPD Guidelines do not say that it does. Such a statement may be used only as a possible indication, together with others, that a terrorism enterprise investigation may be justified. Section V.D.1.b. says; "While no particular factor or combination of factors is required, considerations that will generally be relevant to the determination whether the threshold standard for a terrorism enterprise investigation is satisfied include, as noted, a group's statements, its activities, and the nature of potential unlawful acts suggested by the statements or activities." Within that common sense context, I conclude that the NYPD is entitled, as is the FBI under the FBI Guidelines, to give the limited consideration indicated to statements about "defying lawful authority."

### V.

The NYPD Guidelines as originally proposed by Corporation Counsel contained no provision for the retention of documents required or generated by the

Guidelines. Class counsel understandably objected, pointing out that "the FBI Guidelines call for the maintenance of a database 'that identifies all preliminary inquiries and investigations conducted pursuant to these Guidelines and permits the prompt retrieval of information concerning the status (open or closed) and subjects of all such inquiries and investigations....'" Eisenstein declaration at ¶ 16 (quoting Section V.B. of the FBI Guidelines at p. 21). Class counsel proposed a provision that "the NYPD shall retain, in accessible form,[1] all the following documents," and then appended an itemized list of every sort of document that might be generated by operation of the Guidelines. Class counsel also proposed a provision that "the NYPD shall file with the Handschu Authority copies of all documents" described in that list. Class counsel argued that documents are required to be retained "for the sake of accountability," Eisenstein declaration at ¶ 16, and that the filing of the NYPD documents with the Handschu Authority "is necessary to enable the Authority to fulfill its continuing duty and to meet the need discussed in paragraph 16, above," *id.* at ¶ 17, which I take to be a reference to "accountability."

■ Corporation Counsel acknowledge the need for a provision for document retention, and have included this language in the revised NYPD Guidelines at Section VII.B.:

> All documentation required under these Guidelines shall be maintained by the Intelligence Division in accordance with general police department practice and applicable municipal record retention and destruction rules, regulations and procedures. Under these rules and practices documents are retained for no less than five years.

Corporation Counsel say they are opposed "to any obligation to retain these documents in an electronic database" as proposed by class counsel, Donoghue declaration dated March 10, 2003 at ¶ 3, which is puzzling, since I do not see that class counsel are specifically proposing an "electronic data base." In any event, I agree with the NYPD that the precise manner of document retention should be left to the internal practice of the Department, so long as the principle of Guidelines document retention is achieved. I think that Corporation Counsel's proposed Section VII.B. accomplishes that objective.

I agree with the NYPD's contention that copies of Guidelines-generated documents need not be filed with the Handschu Authority. Class counsel's presentation overstates the Authority's responsibilities under Section V of the Modified Handschu Guidelines with respect to "accountability." Under Modified Handschu, the Authority's function is limited to conducting an inquiry in response to a request by a person, group or organization "having reason to believe that such person, group or organization has been the subject of investigation of political activity which violates constitutionally guaranteed rights and privileges." *See Handschu,* at 333, 345. The document retention provision now added to the NYPD Guidelines ensures that if the Authority conducts an inquiry in response to such a request, the paper trail has been preserved. That is sufficient for the discharge of the Authority's present mandate. There is no need to make the Authority an additional repository of Guidelines-generated documents.

## VI.

The last dispute requiring discussion concerns the final paragraph of proposed

---

**1.** Class counsel's proposed language did not specify to whom the documents would be

"accessible." The same may be said of the FBI Guideline quoted in text.

Section X, captioned "Reservation." That paragraph provides:

> These guidelines are set forth solely for the purpose of internal NYPD guidance. They are not intended to, do not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter, civil or criminal, nor do they place any limitation on otherwise lawful investigative and litigative prerogatives of the NYPD or the City of New York.

Class counsel object to this paragraph. They wish it to be deleted. Class counsel observe, first, that the NYPD Guidelines start with a statement in the Preamble that they are "binding on all members of the service who are engaged in the investigation of political activity," Eisenstein declaration at ¶ 19,[2] and second, that "[t]his Court has stated that they reflect the standards of the Constitution," *id;* counsel then argue that [t]hese statements in and regarding the NYPD Guidelines simply cannot co-exist with the assertion that the Guidelines 'are set forth solely for the purpose of internal NYPD guidance' and 'do [not] place any limitation on . . . investigative prerogatives.' " *Id.* As the careful reader will have noticed, the ellipsis employed by class counsel in the last-quoted language signals the omission of the words "otherwise lawful." I think that omission is material.

■ I conclude that the NYPD's reservation is appropriate. Contrary to the impression created by counsel's ellipsis, this language does not seek to free the NYPD from constitutional or lawful restraints. The paragraph in question has two purposes. First, it makes clear that the Guidelines do not place limitations on *"otherwise lawful"* investigative preroga-

tives; nor should they do so. The Constitution continues to sound its dominant chord. Second, the paragraph establishes that no private rights of action are created against the NYPD for departmental failure to follow particular Guidelines procedures or other Guidelines provisions. The FBI Guidelines contain the same provision. It is an appropriate measure for a law enforcement agency to include. Moreover, as I indicated in *Handschu,* at 347 (collecting cases), a violation by the NYPD of the Guidelines procedures could be regarded as relevant to liability in an action by a private party.

## CONCLUSION

For the foregoing reasons, I am satisfied that the revised NYPD Guidelines, submitted by Corporation Counsel as Exhibit B to the Donoghue declaration, set forth the substance of the FBI Guidelines, and do not contain any provisions inimical to the Constitution. In other words, the NYPD has complied with Condition 1 recited in *Handschu,* at 349.

The Court will enter an Order modifying the consent decree and approving the Modified Handschu Guidelines when the NYPD has complied with Condition 2. *Id.*

It is SO ORDERED.

---

2. Class counsel omit the next sentence in the Preamble, which reads: "It is the purpose of these guidelines to enable officers to perform their duties with greater certainty, confidence and effectiveness while at the same time protecting the guarantees of the Constitution."